# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MARIA LECEA,

    **Plaintiff,**      CIVIL ACTION NO. 16-cv-10906

  **v.**         **DISTRICT JUDGE GEORGE CARAM STEEH**

**COMMISSIONER OF**      **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Maria Lecea seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 17). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I. RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**.

## II.     PROCEDURAL HISTORY

Plaintiff filed applications for disabled widow's benefits and supplemental security income on August 5, 2013, alleging that she has been disabled since June 30, 2005, due to neuropathy, pancreatitis, a torn right rotator cuff, chronic obstructive pulmonary disease (COPD), and hepatitis C. (TR 55-56, 145-53, 182.)  Plaintiff subsequently amended her alleged onset date to December 4, 2012. (TR 160.)  The Social Security Administration denied Plaintiff's claims on December 12, 2013, and Plaintiff requested a *de novo* hearing. (TR 55-90, 102-04.)  On September 5, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Oksana Xenos. (TR 33-54.)  In an October 23, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 15-29.)  The Appeals Council declined to review the ALJ's decision (TR 1-5), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff sets forth the procedural history of this matter and provides a brief statement of facts, which primarily consists of a summary of her subjective complaints and is not supported by citations to the record. (Docket no. 14 at 8-9.)  The ALJ summarized Plaintiff's hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in her decision. (TR 18, 21, 22-27, 29.)  Defendant adopts the ALJ's recitation of the facts. (Docket no. 17 at 8.)  There are no material inconsistencies between the ALJ's summary of the facts and the record; therefore, the undersigned will incorporate the summary by reference.  Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the

hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act, for which the prescribed period ended on October 31, 2015.  (TR 17.)  Next, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of December 4, 2012.  (TR 18.) The ALJ also found that Plaintiff suffered from the following severe impairments: diabetes, neuropathy, degenerative disc disease, COPD, obesity, right shoulder torn rotator cuff, hypertension, depression, antisocial personality disorder, and substance use disorder, but that her diagnoses of hepatitis C and trigger finger and her history of pancreatitis were not severe impairments.  (TR 18.)  Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 18-21.)  The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant cannot climb ladders, ropes, or scaffolds, and can only occasionally climb ramps or stairs.  She is also limited to occasional balancing, stooping, kneeling, crouching, and crawling.  The claimant can occasionally reach overhead with the dominant right upper extremity and can frequently handle and finger with her bilateral upper extremities.  She must be allowed to alternate between sitting and standing at will at her workstation.  The claimant should avoid hazards such as moving machinery and unprotected heights.  She should avoid concentrated exposure to fumes, odors, and noxious gases.  The claimant is limited to simple, routine work with minimal changes in the work setting.  She is limited to occasional contact with supervisors, coworkers, and the public.

(TR 21-28.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 28-29.)

Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from December 4, 2012, through the date of the decision.  (TR 29.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.   It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.   *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.   *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).   If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.   *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which

the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).    This "substantial evidence" may be in the form of vocational expert testimony in

response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

**C.      Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed for an award of benefits under sentence four because (1) "[t]he RFC determination by the ALJ did not accurately portray [Plaintiff's] physical and mental impairments and substantial treatment;" and (2) "[t]he substantial evidence on the record demonstrates that the ALJ failed to properly evaluate Listing 1.04."  (Docket no. 14 at 10-18.)

*1.   The ALJ's Assessment of Plaintiff's RFC*

Plaintiff argues that the ALJ's assessment of her RFC does not accurately portray her physical and mental impairments.  In making this argument, Plaintiff makes several general, conclusory arguments, which will be addressed in Section 3 of this Report and Recommendation.

Specifically, Plaintiff argues that the ALJ failed to discuss or evaluate certain evidence; the sit-stand option assessed by the ALJ is flawed; the ALJ failed to properly assess her credibility; and the ALJ failed to include a narrative discussion in the RFC assessment in accordance with Social Security Ruling 96-8p. (Docket no. 14 at 11-14.)

a.    <u>The ALJ's Discussion of the Medical Evidence</u>

Plaintiff argues that there is no discussion of Plaintiff's congestive heart failure or peripheral artery disease at any step of the sequential evaluation process; she then backpedals on that argument by admitting that the ALJ does mention those impairments in passing at step four, but minimizes the symptoms when Plaintiff clearly has chronic heart failure. (Docket no. 14 at 11.) Indeed, the ALJ did not find Plaintiff's congestive heart failure or peripheral artery disease to be either severe or non-severe impairments at step two of the sequential evaluation process. (*See* TR 18.) But the ALJ's step-two determination does not constitute legal error, as the ALJ sufficiently discussed Plaintiff's cardiovascular impairments, including the February 2012 diagnosis of congestive heart failure, in assessing Plaintiff's RFC. *See Marziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). For example, the ALJ noted that Plaintiff's February 2012 physical examination was largely unremarkable, with clear lung sounds, regular heart rate and rhythm, and extremities free of edema, and that a SPECT study conducted the following month revealed normal left ventricular ejection fraction of 60% and no evidence of ischemia. (TR 23.) The ALJ also discussed several diagnostic studies performed in 2013, and pointed out that those studies showed that Plaintiff's cardiovascular functioning remained mostly intact. (TR 24.) The ALJ concluded her decision by stating that Plaintiff's RFC is supported by the objective medical evidence, which showed only moderate impairments of Plaintiff's heart, among other things. (TR 27.) There is no error here.

7

Plaintiff also argues that the ALJ failed to discuss her treating physician's finding that Plaintiff has severe stenosis, Plaintiff's complaints of pain and burning when she ambulates, or Plaintiff's testimony that she needs to lie down and elevate her legs three times per day. (Docket no. 14 at 12.) Plaintiff is correct that the ALJ did not specifically mention these three items of record evidence in her decision; however, "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)). Furthermore, the ALJ did discuss record evidence closely related to the evidence at issue. For instance, the ALJ discussed Dr. John Santa Ana's 2014 treatment notes, in which the doctor noted that Plaintiff suffered from severe stenosis. While the ALJ did not note the severe stenosis, she did note that at Plaintiff's three appointments with Dr. Santa Ana, Plaintiff reported chronic pain in her neck and lower back, the doctor observed tenderness at both locations and limited range of motion about Plaintiff's neck, he prescribed narcotic and neuropathic pain medications to Plaintiff, and he observed that Plaintiff exhibited normal lumbar range of motion, negative straight leg raising tests, and normal gait. (TR 22-23.)

The ALJ also acknowledged Plaintiff's testimony that she experienced painful swelling in her legs and feet and that she was unable to stand or sit for more than thirty minutes at a time or walk for more than one-and-a-half blocks as a result. (TR 21.) The ALJ acknowledged that the record reflected Plaintiff's multiple complaints of leg pain but also few doctor's appointments for that pain. (TR 22.) The ALJ pointed out that although Plaintiff reported leg pain with walking, in January 2012, she said that her leg pain usually occurred at rest. (TR 22.) The ALJ also discussed Plaintiff's December 2012 doctor's appointment at which an ultrasound

study of Plaintiff's legs revealed mildly abnormal ankle-brachial indices possibly related to her diabetes, but no duplex evidence of significant arterial stenosis or occlusion in Plaintiff's lower extremities.  (TR 23-24.)  The ALJ noted that at that appointment, Plaintiff claimed of leg pain so severe that she had to stop walking her dog, but her physical examination revealed no pedal edema.  (TR 24.)  The ALJ accounted for the evidence discussed above by incorporating postural limitations and a sit-stand option into Plaintiff's RFC.  (*See* TR 21, 25.)  For these reasons, Plaintiff's Motion should be denied with regard to this issue.

b.    The Sit-Stand Option Assessed by the ALJ

Next, Plaintiff argues that the ALJ erroneously failed to specify the frequency of the sit-stand option in the RFC assessment and in the hypothetical question given to the VE.  (Docket no. 14 at 12-13.)  Plaintiff is blatantly incorrect in this instance; the ALJ specified in the RFC and in her hypothetical question to the VE that Plaintiff must be allowed to alternate between sitting and standing *at will* at her workstation.  (TR 21, 51 (emphasis added).)

Plaintiff also argues that the VE named only unskilled jobs in the sample of jobs that Plaintiff could complete, and unskilled jobs are particularly structured so that a person cannot ordinarily sit and stand at will.  (Docket no. 14 at 12.)  Plaintiff further argues that the VE's testimony given in response to the hypothetical question is contradictory to the RFC.  (*Id*. at 12-13.)  Indeed, "most jobs [including unskilled jobs] have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. . . . In cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base."  SSR 83-12, 1983 WL 31253, at *4 (S.S.A. 1983).  Here, the ALJ asked the VE whether a need to be able to alternate between sitting and standing at will at the work station would affect the jobs that the VE had indicated

9

that the hypothetical individual could perform.  (TR 51.)  The VE testified that the sit-stand option would comport to those jobs as long as it did not exceed the definition of light work, which constitutes being seated up to two hours per day.  (TR 51.)  The ALJ responded, "Okay. So no effect, you're saying?"  (TR 51)  And the VE responded, "Correct."  (TR 51.)  The VE clearly testified that there are a significant number of unskilled jobs in the national economy that Plaintiff can perform that accommodate a sit-stand option at will.  Accordingly, the ALJ's step-four determination is supported by substantial evidence, and Plaintiff's Motion should be denied in this regard.

### c.    The ALJ's Assessment of Plaintiff's Credibility

Plaintiff asserts that "[t]he ALJ never evaluates [Plaintiff's] subjective complaints in accordance with the disability regulations pertaining to evaluation of symptoms under SSR 96-7p."  (Docket no. 14 at 13-14.)  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997).  But credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.[1]  "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not)

---

[1] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016.  *See* SSR 16-3p, 2016 WL 1119029, at *1; 2016 WL 1237954.  Nevertheless, because the ALJ's decision in this matter was rendered prior to the effective date of SSR 16-3p, the ALJ was obligated to comply with SSR 96-7p.  *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.")

credible.'"  *Id.*  "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree.  *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).  As part of her argument, Plaintiff asserts that the ALJ failed to consider these factors.  (Docket no. 14 at 13-14.)

Here, the ALJ considered and discussed Plaintiff's hearing testimony and other subjective complaints of pain in conjunction with the record evidence, and she found that Plaintiff's allegations were not entirely credible.  (TR 21-28.)  The ALJ discussed elements of Plaintiff's credibility throughout the decision, however, the ALJ set forth much of her discussion regarding Plaintiff's credibility in the following paragraphs:

> No treating source of record reported signs of radiculopathy or other acute spinal abnormalities in the claimant (e.g., positive straight leg raising tests, atrophy, weakness in the upper or lower extremities, sensory deficits, incontinence). While the claimant took prescription pain medications, she did not receive aggressive treatments consistent with disabling back pain or functional limitations (e.g., epidural injections, TENS unit, surgery, physical therapy).  The claimant did

11

undergo shoulder injections, but the record shows these were several months apart and the claimant reported substantial relief from them, enough that she repeatedly declined to undergo surgery to repair her rotator cuff tear. Although the claimant testified she had difficulty holding objects, she did not complain of this limitation to any treating source of record. Overall, the record shows that the claimant's musculoskeletal impairments caused chronic but manageable pain in the claimant, and did not substantially limit her strength, gait, dexterity, or overall mobility.

. . .

The claimant received about three months of outpatient treatment for major depression and borderline personality disorder in 2006 (Exhibit 1F). Otherwise, the record contains no evidence of mental health treatment during the period of alleged disability. When a claimant alleges a condition severe enough to be disabling, there is a reasonable expectation that the claimant will seek examination and treatment. This complete lack of treatment for the entire period of alleged disability undermines the claimant's allegations of disabling mental limitations during this time. Moreover, no physician who treated the claimant during the period of alleged disability reported observing signs of mental impairment in the claimant, such as unusual behavior, distractibility, or difficulty understanding information discussed in doctor's appointments.

. . .

Finally, the claimant has described daily activities that are inconsistent with a finding of physical disability based [sic]. Per the claimant's own statements, she is able to perform personal care activities and do household chores within her physical capacity, shop in stores, read, watch television, manage money, and travel by public transportation (Exhibit 3E; Hearing Testimony). All of these activities require a capacity for prolonged concentration, focus, memory, and occasional social interaction, which implies an ability to perform similar activities in a work context.

(TR 23, 26, 27.) Additionally, the ALJ pointed out that the record reflects Plaintiff's multiple complaints of leg and back pain, but only a few doctor's appointments related to that pain. (TR 22.) The ALJ also pointed out that although Plaintiff complained of leg pain while walking in January 2012, she said that her leg discomfort usually occurred at rest. (TR 22.)

Plaintiff raises a few specific issues with regard to the ALJ's credibility analysis. First, Plaintiff challenges the ALJ's finding that her daily activities are consistent with work-like

12

activities.  (*See* TR 27.)  Plaintiff argues that her limited daily activities do not support the ALJ's conclusion that Plaintiff can work eight hours per day, forty hours per week on a sustained basis. (Docket no. 14 at 13 (citing *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) for the principle that activities performed on an intermittent basis, standing alone, do not establish the ability to perform such tasks on a sustained basis).)  But Plaintiff defeats her own argument in relying on *Walston* because the ALJ in the instant matter did not rely solely on Plaintiff's ability to perform daily activities in determining that Plaintiff is not disabled or in finding that Plaintiff's allegations were not entirely credible.  The ALJ relied on several items, such as the objective medical evidence, the medical opinion evidence and the lack thereof, Plaintiff's daily activities, and Plaintiff's limited treatment, among other things.  The ALJ's characterization and discussion of Plaintiff's daily activities comports with SSR 96-7p and is not erroneous.

Plaintiff also purports to argue that the ALJ improperly discounted the regular shoulder injections that she received for her torn rotator cuff because Plaintiff admitted that they helped her "quite a bit."  (Docket no. 14 at 12.)  The ALJ, however, did not discount the shoulder injections, but she properly discounted Plaintiff's credibility regarding the disabling nature of her torn rotator cuff by discussing the treatment she received for her shoulder under SSR 96-7p, and noting that the treatment provided Plaintiff with substantial relief, so much so that she declined corrective surgery.

Plaintiff also argues that the ALJ failed to consider Plaintiff's chronic pain and the side effects of her medication in evaluating Plaintiff's credibility.  (Docket no. 14 at 14.)  Plaintiff's argument here is belied by statements made by the ALJ in the decision.  Specifically, the ALJ found that Plaintiff's prescriptions for narcotic and neuropathic pain medications throughout the alleged period of disability supported Plaintiff's allegation of chronic pain requiring regular

medication; she also found that the record showed that Plaintiff's musculoskeletal impairments caused chronic but manageable pain.  (TR 22, 23.)  The record demonstrates that the ALJ accounted for Plaintiff's "strong" medications in evaluating Plaintiff's credibility.  (TR 22, 25.) Notably, Plaintiff does not identify the medication side effects that the ALJ failed to consider or indicate how those side effects affect her ability to work.  Plaintiff's argument lacks merit.

The immediate discussion demonstrates that the ALJ set forth numerous legitimate reasons for discrediting Plaintiff's hearing testimony and written statements in her decision, many of which apply the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and SSR 96-7p.  Moreover, the ALJ supported her finding that the severity of Plaintiff's subjective complaints was not supported by the objective medical evidence by explicitly discussing and citing to several examples of inconsistency between Plaintiff's complaints and the medical record.  Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court the weight that she gave to Plaintiff's statements and the reasons for that weight.  The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard.

d.      The ALJ's Compliance with Social Security Ruling 96-8p

Plaintiff also argues that the ALJ's decision should be reversed because the ALJ did not comply with SSR 96-8p, which requires an ALJ to support the RFC by including a narrative discussion in the decision describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence.  (Docket no. 14 at 14 (citing SSR 96-8p, 1996 WL 374184, at *7).)  Plaintiff's argument in this regard consists of the following conclusory statements:  (1) "[t]here is a clear lack of discussion in the decision;" (2) "[t]he decision is one conclusion after another without one piece of analysis;" and (3) "[w]ithout any

14

discussion of the evidence to support any conclusion, the ALJ finds the Plaintiff capable of light work . . . ."  Plaintiff's argument is not only conclusory, it is also frivolous.

Here, after the ALJ provided a thorough, detailed summary and analysis of the record evidence of Plaintiff's physical impairments and explained the basis for her finding that Plaintiff was not entirely credible, the ALJ engaged in the following discussion:

> The totality of evidence demonstrates some limitations in the claimant's residual functional capacity.  In reducing the claimant's exertional level to light work with a sit-stand option and limiting her postural activities, the undersigned considered the objective evidence of degenerative changes in the claimant's cervical and lumbar spine, long-term treatment with strong medications, and moderate limitations in energy stemming from her respiratory impairment.  The undersigned also considered these factors in restricting the claimant's exposure to hazards, as her pain symptoms and use of narcotic pain medication could put the claimant at increased risk of injury in these environments.  Similarly, the claimant's respiratory symptoms warrant limitations on her exposure to air irritants that could trigger or exacerbate her wheezing.  While treating sources did not observe substantial limitations in the claimant's shoulder range of motion, the objective medical evidence of a rotator cuff tear supports the claimant's allegations of pain in this joint, and the cervical spine MRI revealed degenerative changes that could reasonably be expected to produce some limitations in the claimant's hands, though not to a disabling degree.  Therefore, the undersigned limited the claimant's overhead reaching, handling, and fingering.  Thus, the claimant has met her burden of showing some functional limitation, which the undersigned addressed in assessing her residual functional capacity.  Within these limitations, the claimant is capable of performing physical work activities on a sustained basis as defined in the Regulations.

(TR 25-26.)  Subsequently, after discussing Plaintiff's mental impairments, the ALJ engaged in a similar, shorter narrative discussion with regard to the entire record.  (TR 27-28.)  The undersigned concludes that the narrative discussions that the ALJ incorporated into her decision are more than sufficient to satisfy the requirements of SSR 96-8p, particularly in light of the undeveloped nature of Plaintiff's argument on the issue.   Plaintiff's arguments regarding the ALJ's formulation of her RFC lack merit, as the ALJ's RFC assessment is supported by

substantial evidence in the record.  Plaintiff's Motion should be denied to the extent that she alleges error with the ALJ's formulation of her RFC.

2.   *The ALJ's Assessment of Plaintiff's Impairments under Listing 1.04*

Plaintiff challenges the ALJ's determination at step three of the sequential evaluation process that Plaintiff's impairments do not meet or medically equal Listing 1.04A.  (Docket no. 14 at 14-17.)  At the third step of the sequential evaluation process, a claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings in the Listing of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  "When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review."  *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)).  A claimant must satisfy all of the criteria to meet a listing, or have impairments that are medically equivalent to or equal in severity and duration to the criteria of a listed impairment.  *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th Cir. 2009).  It is the claimant's burden to demonstrate that she meets or equals a listed impairment at the third step of the sequential evaluation process.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

Under Listing 1.04, disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) are defined as those:

> resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04.

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (TR 18.) With regard to Plaintiff's musculoskeletal impairments, the ALJ explained:

The claimant's musculoskeletal impairments were evaluated under listings 1.02 (joint dysfunction) and 1.04 (disorders of the spine). No listing is met because the medical evidence of record does not show that the claimant has the degree of difficulty in ambulating as defined in 1.00(B)(2)(b) or an inability to perform fine and gross movements effectively as defined in 1.00(B)(2)(c). Furthermore, the record does not contain evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication as required by 1.04. Regarding the effects of spine impairment on the claimant's upper and lower extremities, the medical evidence of record does not demonstrate significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station as defined in 11.00C. Finally, the record shows that the cumulative effects of obesity do not raise the severity of the claimant's musculoskeletal impairments to listing level (1.00Q).

(TR 18-19.)

Plaintiff claims that she is puzzled as to why the ALJ never evaluates the medical evidence to determine whether Plaintiff meets and/or equals Listing 1.04. (Docket no. 14 at 14.)

Plaintiff continues that the ALJ only mentions Listing 1.04 in passing and that the ALJ does not discuss the medical evidence or the voluminous medical records in her one half-sentence analysis. (*Id*.) Plaintiff also questions what medical opinion evidence the ALJ relied on in finding that Listing 1.04 was not met. (*Id*. at 14-15.) Defendant responds that the medical opinions of Dr. Stephen E. Wood, the non-examining state agency physician, and Dr. Cynthia Shelby-Lane, the consultative examiner in this matter, demonstrate that Plaintiff did not meet or medically equal the requirements of Listing 1.04.[2] (Docket no. 17 at 25.) Defendant also argues that while the ALJ did not fully discuss Plaintiff's condition at step three, any error in this regard is harmless, because the ALJ did analyze the necessary evidence later in her decision. (*Id*. at 27.)

Defendant is correct. The ALJ discussed Plaintiff's spinal impairments in specific enough terms later in her decision to make it clear that Plaintiff did not meet the criteria of Listing 1.04, specifically, Listing 1.04A. First, the ALJ reviewed the objective medical evidence and found that it demonstrated only moderate anomalies and functional limitations. (TR 22.) In so finding, the ALJ discussed Plaintiff's April 2013 MRI of her lumbar spine and noted that it revealed only mild degenerative changes, among other things, but not nerve root impingement, fracture, dislocation, or other acute spinal abnormalities. (TR 22.) The ALJ also evaluated the results of the electromyography/nerve conduction study of the bilateral lower extremities that Plaintiff underwent in May of 2013 and noted that it revealed findings consistent with peripheral neuropathy, but no evidence of superimposed nerve root compromise. (TR 22.) The ALJ also discussed Plaintiff's January 2014 MRI of her cervical spine and acknowledged that it revealed multilevel degenerative changes with left ventral cord flattening and foraminal narrowing at C5-

---

[2] The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. SSR 96-6P, 1996 WL 374180, at *3 (S.S.A. July 2, 1996).

C6, but noted that it did not reveal evidence of acute abnormalities at any level of the cervical spine.  (TR 22.)

The ALJ discussed medical records in which Plaintiff's straight leg raising tests were negative and she exhibited normal gait and reflexes.  (TR 22.)  The ALJ also discussed the records from Plaintiff's three appointments with Dr. Santa Ana in 2014, at which Plaintiff reported chronic neck and lower back pain.  (TR 22.)  The ALJ noted that Dr. Santa Ana observed tenderness at both locations and limited range of motion about Plaintiff's neck, but he also observed normal lumbar range of motion, negative straight leg raising tests, and normal gait.  (TR 22-23.)  Ultimately, the ALJ pointed out that no treating source of record reported signs of radiculopathy or other acute spinal abnormalities like positive straight leg raising tests, atrophy, weakness in the upper or lower extremities, sensory deficits, or incontinence.  (TR 23.)  The ALJ concluded that according to the record, Plaintiff's musculoskeletal impairments caused chronic but manageable pain, but they did not substantially limit her strength, gait, dexterity, or overall mobility.  (TR 23.)  The ALJ's discussion of the record evidence related to Plaintiff's spinal impairments in evaluating Plaintiff's RFC sufficiently explains and clarifies the ALJ's step-three finding that Plaintiff's impairments do not meet the criteria of Listing 1.04A.  The ALJ's discussion is not so deficient as to preclude meaningful review and is supported by substantial evidence in the record.

Next, while not explicitly stated, Plaintiff seemingly alleges that the ALJ should have sought an updated medical opinion to determine whether Plaintiff's impairments met Listing 1.04 because Dr. Wood and Dr. Shelby-Lane's opinions, on which the ALJ relied, predate Plaintiff's January 2014 cervical spine MRI.  (Docket no. 14 at 16-17.)  In making this argument, Plaintiff recites the results of her January 2014 MRI and points out that Dr. Santa Ana concluded

19

that the MRI showed severe stenosis.  (*Id*.)  Then, "Plaintiff wonders what is the outcome of the ventral cord flattening would be mean as far as equaling listing 1.04A."  (*Id*. at 17 (grammatical errors in original).)

Social Security Ruling 96-6p states that an ALJ "must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."  SSR 96-6P, 1996 WL 374180, at *3-4.  But in order for the ALJ's decision to be erroneous based upon his failure to seek an updated medical opinion, Plaintiff has to show that the additional evidence does, in fact, call for an updated opinion.  *See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 830 (6th Cir. 2009).

Plaintiff has not met her burden in this regard.  While Plaintiff's January 2014 MRI of her cervical spine reveals that her cervical spinal impairments are more severe than her lumbar spinal impairments, and that they result in severe stenosis, she has failed to adduce that the new evidence undermines Dr. Wood and Dr. Shelby-Lane's findings that Plaintiff's impairments do not meet or medically equal Listing 1.04.  Specifically, the new evidence does not cure the lack of any record evidence of nerve root compression characterized by radiculopathy, motor loss (atrophy with associated muscle weakness or muscle weakness), sensory or reflex loss, and a positive straight-leg raising test, all of which is explicitly required to meet Listing 1.04A.  (*See* TR 19, 22, 23; docket no. 17 at 26.)  Plaintiff does not make any argument or cite any evidence to the contrary.  Accordingly, Plaintiff's Motion regarding the ALJ's step-three determination should be denied.

20

### 3.      *Plaintiff's Other Arguments*

Plaintiff purportedly sets forth other arguments in her brief, such as the ALJ "never accurately states what limitations [Plaintiff] suffers from her severe impairments," "[t]here are numerous oversights in the ALJ decision which would make a light work RFC unreasonable," and "[t]he ALJ fails to evaluate the medical evidence and instead plays the role of doctor in the decision."   (Docket no. 14 at 11, 12.)   Such arguments, however, are either completely undeveloped, incorrect, and/or made without performing a thorough review of the ALJ's decision.   "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.   It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and internal quotation marks omitted).

## VI.      CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 14) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 17).

## <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  February 22, 2017          s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  February 22, 2017          s/ Lisa C. Bartlett_____
                                   Case Manager